IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ROBERT HUNT,

Plaintiff,

vs.

ROB JEFFERY'S, Director NDCS; RUSSELL OGG, Unit Manager NSP; KATHY MCINTOSH, Case Manager NSP; AHMED NASER, Case Manager NSP; KORY BOURGUIEN, Lieutenant NSP; BLAKE GRAGSON, Shop 20 Supervisor NSP; and APRIL DUNNING, Assistant Ombudsman;

Defendants.

**8:25CV609**

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Robert Hunt's Complaint. Filing No. 1. Also before the Court are Plaintiff's motion for appointment of counsel, Filing No. 2, motions for summons, Filing Nos. 5, 12, and 22, motion for leave to proceed in forma pauperis, Filing No. 10, and motion to partially amend his Complaint, Filing No. 13. Plaintiff paid the full $405.00 filing fee shortly after this case was filed, *see* Text Entry dated Oct. 23, 2025, so the Court will deny his IFP motion filed on February 19, 2026, Filing No. 10, as moot. The Court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915A.

## I. SUMMARY OF COMPLAINT

Plaintiff's Complaint consists of seven type-written pages and 37 pages of attached exhibits, which are identified as Exhibits 1 through 15. Filing No. 1. Plaintiff also filed additional supplements to his Complaint on March 27, March 30, April 3, June 25, and August 13, 2026, which consist of over 380 pages of exhibits identified as Exhibits 16

through 20 and 22 through 68. Filing Nos. 15, 16, 18, 23, and 24. For purposes of conducting this initial review, the Court has considered Plaintiff's supplemental materials along with the Complaint.

Plaintiff is in an inmate in the custody of the Nebraska Department of Correctional Services ("NDCS") and confined in the Nebraska State Penitentiary ("NSP"). On October 9, 2025, Plaintiff filed his Complaint asserting claims for relief under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") for alleged denial of certain religious and mental-health related accommodations and for alleged retaliation for filing grievances concerning various conditions at NSP, including diets, overcrowding, and the grievance procedures themselves, which resulted in Plaintiff losing his job and certain property and receiving "more than triple the misconduct reports he had received in the 40 years the plaintiff has been incarcerated." Filing No. 1 at 1. Plaintiff brings his claims against NDCS Director Rob Jeffreys,[1] NSP Case Managers Kathy McIntosh and Ahmad Naser, NSP Unit Manager Russel Ogg, NSP Correctional Lieutenant Kory Bourquien,[2] NSP Shop 20 Supervisor Blake Gragson,[3] and Assistant Ombudsman April Dunning (collectively "Defendants").[4] *Id*. at 1–2.

[1] The Court has omitted the apostrophe used by Plaintiff in this defendant's name and will use the correct spelling of "Jeffreys."

[2] Plaintiff alternately refers to this defendant as "Bourquien" and "Bourquiem." *See* Filing No. 1 at 2, 4. The Court will refer to this defendant as "Bourquien" throughout this order.

[3] Plaintiff alternately refers to this defendant as "Gragson" and "Graigson." *See* Filing No. 1 at 2–3. The Court will refer to this defendant as "Gragson" throughout this order.

[4] The Court will refer to each individual defendant by his or her last name.

Plaintiff alleges the following facts in support of his claims. Beginning on September 12, 2023, through the end of 2023 and well into 2024, Plaintiff filed grievances regarding his "ADA issues which are mental health related," "[r]eligious issues," unanswered and lost grievances, the clearly-marked "boxes used for the grievances . . . not being used," and "issues related to the general overcrowding in NSP and other NDCS facilities." *Id*. at 3.[5] Plaintiff filed at least eight grievances on various dates, including September 23, November 4, and December 21, 2023, and March 27 and May 7, 2024, but "most of them [were] lost and many excuses were used." *Id*. On November 25, 2023, Plaintiff was called into McIntosh's office and asked, "What cost are you willing to pay," in relation to the grievances Plaintiff had filed. *Id*. On November 30, 2023, Plaintiff began receiving misconduct reports ("MR") and this continued into 2024 with Plaintiff receiving 6 or 7 MRs, which was over three times as many as Plaintiff had received in his 40 years of incarceration in NDCS.

On January 2, 2024, housing unit staff contacted shop supervisor Gragson and asked if Plaintiff had permission to do the work he had "been doing for veterans and ADA issues in the shops." *Id*. Gragson stated Plaintiff did not have permission. However, Plaintiff did have permission from then-shop supervisor Haskin and approval from many [including] former director of NDCS and wardens and deputy wardens at NSP, specifically Associate Warden Hurt and then-Deputy Warden Hemminger." *Id*. On January 8, 2024, Plaintiff was "laid in" from his shop job, which he had held since 2019, and was later fired on March 3, 2024. *Id*. Before Plaintiff was fired, Hemminger had stated Plaintiff would keep his job, but "Hemminger was fired because he tried to help inmates succeed." *Id*.

[5] All references to Plaintiff's pleadings have been corrected for spelling, punctuation, and capitalization.

On February 8, 2024, Plaintiff, Naser, and McIntosh were present for a hearing in McIntosh's office at which Plaintiff presented a copy of an inmate interview request ("IIR") form that was sent to Hemminger but answered by Hurt that showed Plaintiff had permission to do the veterans and ADA work in the shop. "McIntosh grabbed that IIR from Naser and stated, 'That needs to go to Unit Manager Ogg's desk' where it disappeared." *Id*. Though unclear, Plaintiff appears to allege that Naser and McIntosh conspired to get rid of the IIR form.

At the suggestion of state Senator Duggin and Inspector General Koebernick, Plaintiff sent copies of materials to the State of Nebraska Ombudsman's office "to keep the correctional officials from confiscating the documents" as Plaintiff alleges they did on November 30, 2023, December 4, 2023, and several other dates when "staff allegedly took documents from the plaintiff's cell and office space." *Id*. at 4. When Plaintiff requested the Ombudsman's office to hold these documents, he received a letter back from Dunning in which she stated, "We are unable to do so," so Plaintiff asked that the documents be returned. *Id*. Dunning "sent a few but not the several bunches that had been previously sent over weeks." *Id*. Plaintiff alleges if Dunning had returned all the materials, "it might have saved the plaintiff several misconduct reports." *Id*.

Plaintiff spoke with Bourquien on nine occasions in 2023—January 1, July 10, July 24, August 8, August 29, September 5, September 29, November 30, and December 19—because, as Plaintiff alleges, "Bourquien was seeing me over one issue of his concern but I keep informing him of staff retaliation for grievances being filed not the concern from staff retaliation for his concern." *Id*. Plaintiff alleges Bourquien failed to investigate Plaintiff's complaints regarding staff retaliation. *Id*. at 6.

Plaintiff alleges these events "put so much strain on the plaintiff he began to be treated for prostate cancer, which plaintiff believes it was in part because of all the stress and relating to the diets that [inmates] are subject to." *Id*. at 3. Plaintiff complains that the diet he receives is 80 to 90% processed foods and does not comply with the suggested religious diet for a Seventh-Day Adventist like himself and the current religious and regular diets provided by NDCS are deficient in that "the diet here causes many health effects, including the prostate cancer that the plaintiff has been treated for, that adds to the plaintiff's stress." *Id*. at 5. Plaintiff further alleges that Defendants have the ability to provide programming to reduce the stress level of Plaintiff's diagnosed PTSD, or post-traumatic stress disorder, and allow Plaintiff "to follow his religious beliefs, . . . that also being an avenue to reduce the chance of [Plaintiff's] cancer to become the physical issue," specifically "putting on 3ABN[6] a worldwide religious channel that not only provides religious programming, but healthy diet programs[ and] music programs, and . . . also putting the Hallmark channel back on the already existing system that portrays solid family programming [both] at no additional cost to the correctional department." *Id*. at 4.

Plaintiff alleges Jeffreys has a history from his previous employment at the Illinois Department of Corrections of allowing staff retaliation, false misconduct reports, taking of property, and staff threats of moving prisoners farther away from their families. Thus, Plaintiff claims Jeffreys and the other Defendants are liable for failing to protect Plaintiff from retaliation for asserting his right to file grievances and for failing to protect Plaintiff's "rights to property that had been approved for the plaintiff to have in his office space and cell." *Id*. at 5. As relief, Plaintiff seeks: (1) a declaration that Defendants cannot retaliate

[6] 3ABN refers to the Three Angels Broadcasting Network. *See* Filing No. 15 at 125.

against Plaintiff, (2) an injunction preventing Defendants or other NDCS staff members from taking any retaliatory action against Plaintiff, (3) expungement of the disciplinary convictions described in the Complaint from Plaintiff's institutional record, and (4) compensatory and punitive damages for the denial of his constitutional rights and violations of the ADA and RLUIPA. *Id*. at 6–7.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d

968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION

As explained below, the Court concludes that Plaintiff's Complaint fails to state a plausible claim for relief against any Defendant, but the Court will give Plaintiff leave to file an amended complaint.

### A. ADA

Liberally construed, Plaintiff's Complaint asserts a claim for damages against Defendants under Title II of the ADA, as amended, 42 U.S.C. § 12131 *et seq*. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Act authorizes suits by private citizens for money damages against public entities that violate § 12132. *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a).

The Act defines "public entity" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State." 42 U.S.C. § 12131(1). This term includes state prisons. *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)). However, individuals may not be sued under Title II of the ADA. *Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014); 42 U.S.C. § 12132 (Title II provides disabled individuals redress for discrimination by a "public entity"); 42 U.S.C. § 12131(1) ("public entity" does not include

individuals). For a claim under Title II of the ADA, "the only proper defendant would be 'the head of the department agency, or unit, as appropriate.'" *Saylor v. Nebraska*, No. 8:20CV264, 2021 WL 2593449, at *1 (D. Neb. June 24, 2021) (quoting 42 U.S.C. § 2000e-16(c) and citing 42 U.S.C. § 12133 and 29 U.S.C. § 794a(a)(1)). Thus, the Court considers Plaintiff's ADA claim as being brought only against Rob Jeffreys in his official capacity as NDCS Director.

"Claims against state officials acting in their official capacities are considered claims against the State and therefore subject to sovereign immunity." *Bio Gen LLC v. Sanders*, 142 F.4th 591, 604 (8th Cir. 2025). "The Eleventh Amendment, as understood by the Supreme Court, 'confirm[s] the structural understanding that States entered the Union with their sovereign immunity intact,' and that the States thus may not be sued in federal court without their consent, unless Congress has validly abrogated the immunity." *Quinnett v. Iowa*, 644 F.3d 630, 632 (8th Cir. 2011) (quoting *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011)); *see Van Wyhe v. Reisch*, 581 F.3d 639, 652 n.4 (8th Cir. 2009) ("The Supreme Court has recognized two circumstances in which an individual may bring suit in federal court against a state. First, Congress may *abrogate* a state's sovereign immunity through legislation enacted pursuant to its Section 5 enforcement power of the Fourteenth Amendment, . . . . Second, a State may *waive* its sovereign immunity by consenting to suit.") (emphasis in original; internal quotations and citations omitted).

The Supreme Court held in *Georgia* that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." 546 U.S. at 159

(emphasis in original). This requires the Court to determine, on a claim-by-claim basis, "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.*

To conduct this analysis, the Court must first determine whether Plaintiff has alleged sufficient facts to state a plausible ADA claim. In order to sufficiently plead that Jeffreys violated Title II, Plaintiff must allege (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the NSP's services, programs, or activities, or was otherwise subjected to discrimination by the prison; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability. *See Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010).

The term "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "Major life activities" include such things as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing,

learning, reading, concentrating, thinking, communicating, and working," as well as "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2).

Plaintiff alleges he has mental-health related ADA issues, which appears to be in reference to his diagnosed PTSD, but he has not set forth sufficient facts to show that he is a "qualified individual with a disability." *See Renteria v. Nebraska Dep't of Corr.*, No. 8:20CV166, 2020 WL 2947100, *3 (D. Neb. June 3, 2020) (allegation that plaintiff was "handicapped" insufficient to show he is a qualified individual with a disability); *Watson v. Kelloggs Co.*, No. 8:20CV126, 2020 WL 2732131, at *5 (D. Neb. May 26, 2020) ("Plaintiff's Complaint contains no facts describing the nature of his disability . . . . Without this basic information, no plausible claim for relief is stated."); *Carlentine v. Duggan*, No. 8:19CV251, 2020 WL 1820129, at *3 & n.2 (D. Neb. Apr. 10, 2020) (ADA plaintiff failed to state a claim upon which relief may be granted because he failed to allege any facts describing "the nature of his disability [and] whether his disability limited his major life activities and, if so, how"). However, the Court will give Plaintiff leave to file an amended complaint, in which he must describe the nature of his alleged disability and how it affects his major life activities.

As to the other elements of Plaintiff's ADA claim, two theories of discrimination are relevant here: (1) disparate treatment and (2) the failure to make reasonable accommodations. *See Audette v. Lake of the Woods Cnty.*, 183 F.4th 627, 635 (8th Cir. 2026). Disparate treatment discrimination is based on "intent or actual motive," whereas in the second type of claim, "the 'discrimination' is framed in terms of the failure to fulfill

an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations." *Peebles v. Potter*, 354 F.3d 761, 766–67 (8th Cir. 2004). Nothing in Plaintiff's Complaint suggests that Jeffreys or any corrections officials intentionally discriminated against Plaintiff because of his disability so the Court's discussion will focus on his failure-to-accommodate claim.

The "deliberate refusal of prison officials to accommodate [an inmate's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and . . . other prison programs" may constitute a violation of Title II. *Georgia*, 546 U.S. at 157; *see also Yeskey*, 524 U.S. at 210 (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). But in order to state a claim upon which relief may be granted, a plaintiff must allege that the defendant's failure to accommodate his alleged disability has prevented him from participating in specific programs and activities at his correctional institution. *Brown v. Nebraska Dep't of Corr. Servs.*, No. 8:16CV217, 2016 WL 5173232, at *6 (D. Neb. Sept. 21, 2016); *see also Brown v. Houston*, No. 8:16CV217, 2018 WL 1309833, at *6 (D. Neb. Mar. 13, 2018) ("To establish a violation of Title II, [a plaintiff] 'must specify a benefit to which he was denied meaningful access based on his disability.'") (quoting *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 888 (8th Cir. 2009)).

Liberally construing his Complaint, Plaintiff contends he has been denied access to the 3ABN and Hallmark television channels which he alleges can "reduce the stress level of the plaintiff's PTSD (diagnosed)." Filing No. 1 at 4. Even if Plaintiff's PTSD might qualify as a "disability," the allegation that Jeffreys and/or other corrections officials have failed to provide him access to two specific television channels does not state a plausible

ADA claim. Plaintiff has not identified what specific activities, services, and programs in which he cannot participate due to Jeffreys' failure to accommodate Plaintiff's disability, *see Brown v. Nebraska Dep't of Corr. Servs.*, 2016 WL 5173232, at *6, and, as even Plaintiff acknowledges, *see* Filing No. 1 at 4 (acknowledging no right to have TV or cable), the lack of access to his desired channels alone does not suggest that Plaintiff has been excluded from participation in or denied the benefits of the NSP's services, programs, or activities.

Because Plaintiff's Complaint fails to state a claim upon which relief may be granted under the ADA, the Court need not examine the question of Eleventh Amendment immunity at this time. *Renteria*, 2020 WL 2947100, at *5 (citing cases). Plaintiff is advised, however, that, in addition to alleging a plausible ADA claim, he must also state a plausible claim under the Fourteenth Amendment. The Court questions whether Plaintiff can truthfully plead sufficient facts to establish such a constitutional violation when he was unable to do so in a previous case filed in this Court where he similarly complained about his inability to watch the 3ABN channel. *See Hunt v. Clarke*, No. 4:02CV3105 (D. Neb. Sept. 11, 2003) (Filing No. 43, finding amended complaint failed to state either an Eighth or First Amendment claim with respect to Plaintiff's transfer to different facility and lack of access to Three Angels Broadcasting Network).

**B. RLUIPA**

Plaintiff also asserts a claim for relief against Defendants pursuant to RLUIPA, which provides, in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless

> the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). A jail, prison, or other correctional facility, which is owned, operated, or managed by, or provides services on behalf of any State or political subdivision of a State, is an "institution." *See* 42 U.S.C. § 1997(1). RLUIPA defines "religious exercise" broadly as including "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

Inmates retain a private cause of action to enforce RLUIPA protections. *See* 42 U.S.C. § 2000cc-2(a) (explaining that "[a] person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government"). "To succeed on such a claim, an inmate must initially produce 'prima facie evidence' that the challenged government practice 'substantially burdens [his] exercise of religion.'" *Native Am. Council of Tribes v. Weber*, 750 F.3d 742, 749 (8th Cir. 2014) (quoting 42 U.S.C. § 2000cc-2(b)). "If the inmate produces such evidence, the burden shifts to the government to prove every other element of the claim (i.e., that its practice furthers a compelling government interest and there are no less restrictive means of furthering that interest)." *Id*. "And while the burden RLUIPA imposes on the government . . . is higher than that applied in constitutional cases, the Eighth Circuit has held that courts afford 'a significant degree of deference to the expertise of prison officials in evaluating whether they met that burden.'" *Kennemore v. Anderson*, No. 4:24-CV-00188,

2025 WL 931979, at *3 (E.D. Mo. Mar. 27, 2025) (quoting *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 832 (8th Cir. 2009)).

As the Eighth Circuit has explained,

> to demonstrate a substantial burden on the exercise of religion, a government policy or action "must significantly inhibit or constrain [religious] conduct or [religious] expression . . . ; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion."

*Van Wyhe v. Reisch*, 581 F.3d 639, 656 (8th Cir. 2009) (quoting *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 & n.7 (8th Cir.2008) (internal quotation omitted)). "RLUIPA's broad protection of 'religious exercise' extends even to religious practices that are not 'compelled by, or central to' a certain belief system." *Id*. (quoting *Patel*, 515 F.3d at 813 n.7, and citing *Gladson*, 551 F.3d at 832–33 (acknowledging that the Court applies the definition of substantial burden set forth in *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004), and as subsequently clarified by the Supreme Court in *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005), to "bar[ ] inquiry into whether a particular belief or practice is 'central' to a prisoner's religion")).

Here, Plaintiff alleges Defendants violated RLUIPA by not giving him access to the 3ABN and Hallmark channels and by providing him with a religious diet that consists of "basically rice and maybe an apple" and "does not comply with the specific religious suggested diet for a Seventh-Day Adventist." Filing No. 1 at 5. Plaintiff sues Defendants, all of whom are alleged to be state employees, in their official and individual capacities[7] seeking compensatory and punitive damages only, *see Id*. at 6–7. However, Plaintiff's

[7] While Plaintiff did not specify the capacity in which he sues Defendant Dunning, *see* Filing No. 1 at 2, the Court assumes, for purposes of initial review, that Plaintiff intended to sue Dunning in both her official and individual capacities like all the other Defendants.

RLUIPA claims cannot proceed against Defendants in either their official or individual capacities.

First, Plaintiff's claims for damages against Defendants in their official capacities are claims against the State of Nebraska and, thus, barred by sovereign immunity. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011) ("States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver."); *Van Wyhe*, 581 F.3d at 655 ("[T]he state did not waive its immunity from suit for monetary damages by accepting federal funds on the conditions set forth in the institutionalized persons section of RLUIPA (Section 3) . . . .").

As to Plaintiff's individual-capacity claims, the Eighth Circuit held in *Barnett v. Short*, 129 F.4th 534 (2025), that an RLUIPA claim against a defendant in his or her individual capacity could not proceed. The Eighth Circuit acknowledged that the language of RLUIPA "permits suits against individual defendants in both their official and individual capacities," *id*. at 542 (citing 42 U.S.C. §§ 2000cc-2(a) and 2000cc-5(4)(A)), but concluded that "Congress's authorization of suits against non-recipients of federal money in their individual capacities exceeds its spending power," *id*. Because the defendant jail administrator in *Barnett* had not consented to any conditions of federal funding, the Court determined that Congress's spending power could not be "brought to bear on her directly." *Id*. at 542–43. Similarly, nothing in the Complaint suggests that any of the Defendants here consented to any conditions of federal funding, and the Court finds Plaintiff's individual-capacity RLUIPA claims against Defendants must be dismissed.

Though Plaintiff's RLUIPA claim seeking damages only cannot proceed against Defendants, the Court will give Plaintiff leave to amend his Complaint to state a plausible claim under RLUIPA to the extent he may seek any injunctive relief against an appropriate Defendant in his or her official capacity.

**C. Section 1983**

Liberally construed, Plaintiff also asserts due process and retaliation claims under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Section 1983 liability is personal, and a plaintiff must show each individual defendant's personal involvement in or direct responsibility for incidents that resulted in injury. *See, e.g.*, *Kingsley v. Lawrence Cnty., Mo.*, 964 F.3d 690, 700 (8th Cir. 2020). As explained below, Plaintiff's Complaint fails to state a plausible due process or retaliation claim under § 1983 against any of the Defendants.[8]

**1. Due Process**

"[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, Plaintiff must demonstrate that he has been deprived of a

[8] To the extent Plaintiff may be attempting to assert other constitutional claims related to his conditions of confinement, such as his allegedly deficient diet, his Complaint fails to allege sufficient, specific facts to either state a plausible claim for relief or to show that any of the Defendants were personally involved in the alleged misconduct.

liberty interest in order to successfully claim that his Fourteenth Amendment right to due process has been violated. *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472, 487 (1995)). A liberty interest can arise out of the Due Process Clause itself or be state-created. *Id*. (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

First, to the extent that Plaintiff asserts a due process claim against Defendant Bourquien based on his failure to investigate Plaintiff's complaints regarding staff retaliation, his claim fails as "[i]nmates do not have a federal constitutional or statutory right to an internal prison investigation." *King v. Ryals*, No. 4:17-CV-709-KGB-BD, 2017 WL 9855225, at *2 (E.D. Ark. Oct. 31, 2017) (citing 42 U.S.C. § 1983; *Gatlin ex rel. Estate of Gatlin v. Green*, 362 F.3d 1089, 1093 (8th Cir. 2004) (providing that a § 1983 claim must be based upon an alleged violation of a federal constitutional or statutory right)), *report and recommendation adopted*, No. 4:17-CV-00709, 2018 WL 3419256 (E.D. Ark. July 13, 2018).

With respect to Dunning, Plaintiff alleges she violated his due process rights by disposing of and failing to return Plaintiff's documents he sent to the Ombudsman's office showing Plaintiff had staff approval to do his veterans and ADA work. Filing No. 1 at 6. Plaintiff's allegations suggest that the alleged deprivation of his property, even if intentional, was a random, unauthorized act by a government employee. "When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Clark v. Kansas City Mo. Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) (internal quotation

marks and citation omitted). The State of Nebraska provides an adequate post-deprivation remedy, including actions for conversion and replevin, and Plaintiff does not allege that such remedies were inadequate or that he even pursued them. *See Hudson v. Palmer*, 468 U.S. 517, 530–33 (1984) (if deprivation of property by prison officials is intentional and state provides adequate post-deprivation remedy, there is no due-process violation); *Rush v. Weber*, No. 4:07CV3182, 2008 WL 2568264, at *4 (D. Neb. June 25, 2008) (plaintiff failed to state a due process claim for deprivation of property against county jail officials as "Nebraska law provides that Plaintiff may pursue the post-deprivation remedies of replevin and conversion" and plaintiff failed to show these remedies were inadequate or that he even pursued them (citing Neb. Rev. Stat. §§ 25-1093 to 25-1093.04)); *Zelenka v. Pratte*, 912 N.W.2d 723, 728 (Neb. 2018) (elements of replevin claim under Nebraska law); *Brook Valley Ltd. P'ship v. Mut. of Omaha Bank*, 825 N.W.2d 779, 787 (Neb. 2013) (elements of conversion under Nebraska law).

Based on the foregoing, Plaintiff has failed to state a due process claim against either Bourquien or Dunning. And because Plaintiff does not allege facts suggesting these two defendants were involved in any other misconduct at issue in the Complaint, the Court will dismiss Plaintiff's claims against Bourquien and Dunning without leave to amend.

**2. Retaliation**

"'[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To proceed on such a First Amendment retaliation claim, a plaintiff must show that: (1) the plaintiff

engaged in protected activity, (2) the government took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Green v. City of St. Louis*, 52 F.4th 734, 739 (8th Cir. 2022). "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007).

Here, Plaintiff generally alleges that Defendants retaliated against him for filing grievances by firing him from his job, taking unspecified property, and issuing misconduct reports against him. However, Plaintiff fails to allege facts showing each individual Defendant's involvement in this alleged retaliatory conduct. For instance, while Plaintiff alleges McIntosh asked Plaintiff, "What cost are you willing to pay," in relation to the grievances Plaintiff had filed, Filing No. 1 at 3, he does not allege sufficient facts showing McIntosh's involvement in the filing of the subsequent misconduct reports, the taking of any property, or the decision to fire him from his job. Plaintiff further alleges McIntosh, with Naser, conspired to get rid of the IIR form showing Plaintiff's permission to do his veterans and ADA work in the shop, but Plaintiff's scant allegations fail to provide any factual context explaining how this conduct is related to Plaintiff's filing of grievances. Similarly, Plaintiff also alleges Gragson told housing unit staff that Plaintiff did not have permission to do his veterans and ADA work in the prison shop, which was false, but Plaintiff alleges no facts suggesting that Gragson knew Plaintiff had permission to do his work or that Gragson responded falsely in retaliation for Plaintiff filing grievances.

Plaintiff also fails to allege facts showing Defendant Jeffreys' personal involvement or direct responsibility for the alleged retaliatory conduct, and Plaintiff cannot impose §

1983 liability on Jeffreys based solely on his previous employment with a different state correctional department. Nor can Jeffreys be held liable for any alleged wrongdoing by NDCS staff members based only on his position as the NDCS Director. "[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009) (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987)). Prison supervisors cannot be held liable under § 1983 on a theory of respondeat superior. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010).

In sum, Plaintiff fails to allege sufficient facts in his Complaint to state a plausible retaliation claim against any named Defendant, but the Court will give Plaintiff leave to amend his Complaint to state plausible retaliation, ADA, and RLULIPA claims and any other plausible claims for relief for which there are facts to support. If Plaintiff chooses to do so, he should keep the following in mind.

**D. Leave to Amend Complaint**

Plaintiff's present Complaint is lacking in factual detail, and it appears Plaintiff may be relying on his hundreds of pages of supplements to fill in the gaps in his pleading and provide the necessary factual context supporting his claims. However, his supplemental filings cannot substitute for pleading sufficient facts in his Complaint to state a plausible claim for relief as required by the Federal Rules of Civil Procedure. Although courts construe pro se pleadings liberally, pro se litigants, like all other parties, must abide by the Federal Rules of Civil Procedure. *See, e.g.*, *Williams v. Harmon*, 294 F. App'x 243, 245 (8th Cir. 2008) (affirming dismissal where pro se litigant failed to comply with the

Federal Rules of Civil Procedure). Among other procedural requirements, parties must formulate their pleadings in an organized and comprehensible manner:

> Specifically, Federal Rule of Civil Procedure 8(a)(1)-(3) requires that a complaint contain a "short and plain statement of the grounds for the court's jurisdiction," a "short and plain statement" of the plaintiff's claims and a "demand for the relief sought." Federal Rule of Civil Procedure 8(d)(1) provides that, although no technical form of pleading is required, each claim must be simple, concise and direct. Federal Rule of Civil Procedure 10(b) directs parties to separate their claims within their pleadings and provides that each claim should be limited as far as practicable to a single set of circumstances. In addition, Rule 10(b) makes clear that each claim that is founded on a separate transaction or occurrence must be stated in a separate count when doing so would promote clarity.

*McPeek v. Unknown Sioux City DEA Officers*, No. C17-4011, 2017 WL 1502809, at *3 (N.D. Iowa Apr. 25, 2017), *aff'd sub nom. McPeek v. Sioux City DEA Unknown Officers*, No. 17-2030, 2017 WL 5440036 (8th Cir. Sept. 29, 2017).

The primary purpose of Rule 8 is to allow the Court and an opposing party to understand whether a valid claim is alleged and, if so, what it is; the complaint must be sufficiently clear so the Court or an opposing party is not required to keep sifting through it in search of what it is plaintiff asserts. *Cody v. Loen*, 468 F. App'x 644, 645 (8th Cir. 2012) (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775–76 (7th Cir. 1994)). "A litigant cannot ignore [his or] her burden of developed pleading and expect the district court to ferret out small needles from diffuse haystacks." *Murillo v. Kittelson*, No. 8:19CV571, 2020 WL 3250231, at *3 (D. Neb. June 16, 2020) (quoting *United States v. Slade*, 980 F.2d 27, 31 (1st Cir. 1992)).

Plaintiff's Complaint and supplemental filings do not contain a "short and plain statement" of his claims nor is each claim "simple, concise, and direct." Instead, Plaintiff indicates he will "show this court in [attached] exhibits," Filing No. 1 at 5, how Defendants

have retaliated against him for filing his grievances. However, Plaintiff cannot expect the Court to sift through the hundreds of pages of IIRs, MRs, and other documents to decipher the events and facts allegedly supporting his claims. That is not the Court's nor a defendant's job.

The Court, on its own motion, will give Plaintiff leave to file an amended complaint, and Plaintiff must set forth in his amended pleading the specific factual allegations supporting his claim or claims against a particular defendant in a clear, concise manner that provides fair notice of the claim and the grounds upon which it rests. To be clear, if Plaintiff chooses to amend his Complaint, he must comply with Rules 8 and 10. *See, e.g.*, *Chandler v. Pogue*, 56 Fed. App'x 756 (8th Cir. 2003) (per curiam) (unpublished opinion) (holding district court did not abuse its discretion by dismissing pro se inmate's lengthy complaint for failure to comply with Rules 8 and 10).

## IV. OTHER PENDING MOTIONS

### A. Motion for Appointment of Counsel

Plaintiff filed a motion seeking the appointment of counsel because he cannot afford to retain counsel, the issues are complex, and he believes having counsel will discourage further retaliation. Filing No. 2. "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011). "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the

claims, and the presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, 859 F. App'x 3, 4 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)).

The Court has carefully reviewed the record and finds there is no need for the appointment of counsel at this time as, at this early stage of litigation, Plaintiff appears able to adequately present his claims. The Court is, however, aware that this situation may change as litigation progresses. As the Eighth Circuit Court of Appeals instructs, the Court will "continue to be alert to the possibility that, because of procedural complexities or other reasons, later developments in the case may show either that counsel should be appointed, or that strict procedural requirements should, in fairness, be relaxed to some degree." *Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993). Plaintiff's motion for appointment of counsel is, therefore, denied.

**B. Motions for Summons**

With his Complaint, Plaintiff filed seven form praecipes for service of summons addressed to each of the Defendants, which the Court construes as a motion for summons. Filing No. 5. Plaintiff later filed additional form praecipes for service addressed to various other individuals who are not named as defendants in the Complaint but appear to be parties Plaintiff seeks to add as defendants through amendment of his Complaint. Filing No. 12; Filing No. 22; *see also* Filing No. 13 (seeking leave to partially amend the Complaint to add two defendants). Notwithstanding that Plaintiff has not yet been granted leave to amend his Complaint to add these additional parties, the Court will deny all of his motions for service of summons as premature.

"Rule 4 requires plaintiffs to serve each defendant with a summons and a copy of the complaint. But district courts cannot issue summonses in *in forma pauperis* prisoner cases until after screening the complaint for frivolousness and other defects under 28 U.S.C. §§ 1915(e) and 1915A(b)." *See Welch v. Byrd*, No. 4:23CV3186, 2024 WL 3292696, at *1 (D. Neb. July 3, 2024) (quoting *Jackson v. Herrington*, 393 F. App'x 348, 353 (6th Cir. 2010) (internal citation omitted)). Here, the Court has reviewed Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A(b) and determined that this matter cannot proceed unless the Complaint is amended to state a claim upon which relief may be granted. As such, this matter may not proceed to service on the current Complaint and the Court will not issue summons at this time.

**C. Motion to Partially Amend Complaint**

On February 19, 2026, Plaintiff filed a motion seeking leave to amend his Complaint solely to add two additional defendants—NSP Unit Administrator Brandon Tan and NSP Deputy Warden Staci Drescher—who he appears to allege retaliated against him for filing grievances by removing him from his law library job in November 2025 after the original Complaint was filed. Filing No. 13.

Rule 15 of the Federal Rules of Civil Procedure provides "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, Nebraska Civil Rule 15.1 provides that "[a] party who moves for leave to amend a pleading (including a request to add parties) must file as an attachment to the motion an unsigned copy of the proposed amended pleading that clearly identifies the proposed amendments." NECivR 15.1(a). In pro se cases, the Court may consider an amended pleading as supplemental to the original pleading. NECivR 15.1(b).

Plaintiff's motion to partially amend does not comply with the local rules of this Court as he did not attach his proposed amended complaint to the Motion. However, because the Court has granted Plaintiff leave to amend his Complaint, the Court will grant Plaintiff's motion and allow Plaintiff to include the two additional defendants identified in his motion, as well as any other defendants Plaintiff wishes to pursue claims against,[9] in amending his Complaint in accordance with this Memorandum and Order and as specified further below.

## V. CONCLUSION

Plaintiff's Complaint fails to state a plausible claim for relief against any Defendant. However, on the Court's own motion, Plaintiff will be given 30 days to file an amended complaint that states a plausible claim for relief against specific named defendants.

If Plaintiff chooses to amend his Complaint, he is advised that **the Court will no longer permit the piecemeal filing of supplemental materials in this case**. Plaintiff's repeated filing of supplementary materials frustrated the Court's ability to discern and review the claims Plaintiff seeks to raise in this matter, and such piecemeal filing does not comply with the Federal Rules of Civil Procedure as explained above.

Accordingly, if Plaintiff decides to file an amended complaint, Plaintiff must include all of the claims he wishes to pursue against all of the defendants he wishes to proceed against in **one document**. The amended complaint must identify each defendant by name and set forth all of Plaintiff's claims (and any supporting factual allegations) against that defendant. Plaintiff should be mindful to explain what each defendant did to him,

[9] On April 3, 2026, Plaintiff filed essentially identical "Briefs" that raise arguments in support of the claims in his Complaint, Filing No. 1, but also appear to raise arguments in support of claims against other individuals not named as defendants in the Complaint. See Filing No. 19; Filing No. 20.

when the defendant did it, how the defendant's actions harmed him, and what specific legal right Plaintiff believes the defendant violated. Plaintiff is encouraged to use the court-approved form to draft his amended complaint, which the Clerk of the Court will provide to him, and he should carefully read and follow the instructions in the form and attach additional pages as needed. Plaintiff should refrain from filing any additional evidentiary materials and, instead, state the relevant facts in support of his claims in his amended complaint. Plaintiff may, however, incorporate by reference any previously filed exhibit as necessary.

Plaintiff is warned that an amended complaint will supersede, not supplement, his Complaint. If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, this matter will be dismissed without further notice to Plaintiff. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915A after he addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED that:

1. Plaintiff's claims against Defendants Kory Bourquien and April Dunning are dismissed without leave to amend. The Clerk of Court is directed to remove Kory Bourquien and April Dunning as defendants to this action.

2. Plaintiff shall have until **October 26, 2026**, to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff. If Plaintiff requires additional time to file an amended complaint, then he may seek an extension of time by filing a written motion prior to the expiration of the deadline.

3. **If Plaintiff decides to file an amended complaint, Plaintiff must include all of the claims he wishes to pursue against all of the defendants he wishes to proceed against in the amended complaint. Plaintiff should be mindful to explain in his amended complaint what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him**.

4. In the event that Plaintiff files an amended complaint, Plaintiff shall restate the relevant allegations of the current Complaint, Filing No. 1, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. **Plaintiff is warned that an amended complaint will supersede, not supplement, his Complaint.**

5. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915A in the event he files an amended complaint.

6. The Clerk of Court is directed to send to Plaintiff the Form Pro Se 14 Complaint for Violation of Civil Rights (Prisoner).

7. Plaintiff's motion to partially amend, Filing No. 13, is granted consistent with this Memorandum and Order.

8. Plaintiff's remaining pending motions, Filing No. 2; Filing No. 5; Filing No. 10; Filing No. 12; Filing No. 22, are denied without prejudice to reassertion for the reasons stated in this Memorandum and Order.

9. The Clerk of Court is directed to set a pro se case management deadline using the following text: **October 26, 2026**: check for amended complaint.

10. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

Dated this 25th day of September, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge